[1] Reported in 26 N.W.2d 117.
Plaintiff and defendant are coöperative associations. The former is a member and stockholder of the latter. Plaintiff seeks to enjoin defendant, its officers, and agents from purchasing for its own account grain which has been consigned to defendant for sale by defendant as a commission merchant. Defendant was organized under L. 1923, c. 326, as amended, and is licensed as a commission merchant by the state railroad and warehouse commission pursuant to Minn. St. 1941, c. 223 (§§223.01 to 223.11).[4] The complaint alleges violation by defendant of L. 1917, c. 19 (which as §§ 223.09 and 223.10 represents a portion of said c. 223). In its answer, defendant admits that it has been and is purchasing for its own account grain consigned to it for sale by it as a commission merchant, and it alleges its intention to continue that practice unless restrained by order of the court. It pleads in justification of its conduct that the prohibitions contained in L. 1917, c. 19, have no application to it because c. 326, the act under which it is organized, authorizes coöperatives formed under that act to operate without the restraints of L. 1917, c. 19. It further alleges that the state railroad and warehouse commission has placed a practical construction to that effect upon the operation of the law. It also alleges that all such purchases are being made agreeable to contracts between it and its patrons. Plaintiff demurred to the answer upon the ground that it failed to state a defense to the complaint. The court overruled the demurrer and *Page 255 
certified the question presented by the demurrer as important and doubtful. The appeal is from that order.
The question submitted to us is whether a coöperative association such as defendant is exempt from the provisions of L. 1917, c. 19, which forbids any individual or corporation doing business as a commission merchant from buying on its own account grain consigned to it for sale as such commission merchant; in other words, whether defendant, a coöperative association organized under L. 1923, c. 326, and doing business as a commission merchant, may buy for its own account grain consigned to it for sale as a commission merchant.
1. In order to correct or stop certain abuses which had arisen in connection with the marketing of agricultural products, especially grain, the legislature passed L. 1917, c. 19, § 1 of which reads:
"No person * * * firm or corporation * * * engaged in selling grain, * * * as commission merchant, or for others for a compensation in any manner, who shall hereafter receive and accept for sale for account of the consignor or owner thereof, any such property, or who shall sell or attempt to sell or dispose of such property for account of such consignor or owner, shall hereafter be interested directly or indirectly, as purchaser or otherwise than solely as the agent of such consignor or owner and according to the contract of agency in the sale, purchase or disposition of such property; and no such person, persons, firm or corporation engaged as aforesaid shall hereafter in any transaction involving such sale, purchase or disposition of such property in any manner, directly or indirectly, represent or promote in any respect whatever the interest of any other person, persons, firm or corporation than said consignor or owner of such property."
By § 2, the act imposes a penalty for violation, consisting of imprisonment or fine and the revocation of the commission merchant's license. As stated, defendant has been duly licensed as a commission merchant by the railroad and warehouse commission pursuant to Minn. St. 1941, c. 223. *Page 256 
Since defendant admits that it has bought and is continuing to buy grain consigned to it by members and patrons on its own account, it is guilty of violation of the prohibitory provisions of c. 19 if such provisions apply to it. It contends, however, that it is not subject to such prohibitions, first, because by L. 1923, c. 326, under which it was organized, it is expressly given the right or power to buy such products for its own account, and, second, since it is a coöperative association and all profits go to members and patrons and not to the association, it cannot act in any manner except in the capacity of agent.
Section 1 of L. 1923, c. 326, the provision which defendant asserts gives it the power it is exercising, reads in part as follows:
"A co-operative association, [sic] may be formed for the purpose of conducting any agricultural, dairy, marketing, warehousing, commission, contracting, building, mining, telephone, manufacturing, or any mechanical, mercantile or electrical heat, light or power business, or for all such purposes or for any other lawful purpose, upon the co-operative plan, and in addition to other powers, such co-operative association, [sic] shall have the power either as agent orotherwise to buy, sell or deal in its own products, theproducts of its individual members or patrons, the products of any other co-operative association or of its members or patrons, whether such co-operative association be organized under the provisions of this act or otherwise." (Italics supplied.)
As applied to the present situation, the essence of the provision is this:
"A co-operative association, [sic] may be formed for the purpose of conducting any * * * commission * * * business * * * upon the co-operative plan, and in addition to other powers, such co-operative association, [sic] shall have the powereither as agent or otherwise to buy * * * the products of itsindividual members or patrons, * * *." (Italics supplied.)
Defendant is buying "the products of its individual members or patrons." The words "either as agent or otherwise" are, it seems to *Page 257 
us, all-inclusive and cover the capacity of defendant to buy in any manner it sees fit. If we were to adopt plaintiff's construction of the statute, we should be required to read the word "otherwise" out of it. There is nothing in the statute to indicate that the legislature intended that the word "otherwise" should be ignored or given any other meaning than the usual one. To us the language is perfectly plain. It is not ambiguous and calls for no interpretation. It is our duty to give to the language chosen its plain meaning.
"Construction lies wholly in the domain of ambiguity. If the language of a statute is plain and unambiguous, there is no room for construction. A statute is to be enforced literally as it reads, if its language embodies a definite meaning which involves no absurdity or contradiction." 6 Dunnell, Dig. 
Supp. § 8938, and cases cited.
Chapter 323 clearly authorizes the formation of coöperative associations to engage in the commission business and gives to such associations the power "either as agent or otherwise" to buy the products of its individual members or patrons. So, even assuming that prior to the enactment of c. 326 the prohibitions found in L. 1917, c. 19, applied to defendant, the later statute repealed by implication its applicability to defendant and its transactions. In view of our impression of c. 326, it does not seem necessary to consider, except in passing, whether L. 1917, c. 19, originally applied to defendant or other similar coöperative associations. If c. 19 originally applied to defendant, then it is repealed. If it did not apply, then, of course, defendant did not violate it. Defendant is engaged in the business of marketing grain for its members and patrons on a coöperative, nonprofit basis. All of its so-called savings belong to and are distributed to its members and patrons on a patronage basis, without discrimination between members and nonmembers. It makes no profits of its own. The patrons are entitled to receive all the financial benefits of defendant's activities. In handling the grain of its patrons, defendant is in reality a selling agency. In ordinary business transactions, the buyer, if he resells, is entitled to all the profits of the deal. The seller has received all he is entitled to. If a coöperative is a so-called *Page 258 buyer of the agricultural products of its patrons, the profits made in the resale inure to the seller, not to the association. The buyer and seller in this kind of a transaction occupy a different status from that of the ordinary buyer and seller. The association is in reality merely a selling agency. In view of our impression of the statutes involved, there is no occasion for considering administrative interpretations placed upon them.
2. Plaintiff contends that L. 1923, c. 326, § 14, prevents an amendment to L. 1917, c. 19. This section can have no bearing on the question before us unless it be assumed that c. 19 applies to coöperative associations. Section 14 reads:
"This statute shall [not][5] be construed or considered as repealing or amending by implication or otherwise any existing law of this State except as herein stated and set forth, and no statute or law hereafter enacted in this state shall be considered or construed as amending or repealing this act by implication or otherwise, unless so provided in express language in such subsequent enactment." (Italics supplied.)
It would seem that an existing law cannot be repealed or amended by implication by another law unless in the later law there is "stated and set forth" in its text matter which is inconsistent with the continued, unchanged existence of the earlier law. So it is obvious that § 14 does not state any new rule with respect to repeals and amendments by implication. If one assumes that L. 1917, c. 19, applies to coöperative associations such as defendant, § 14 of L. 1923, c. 326, by its very terms does not prevent amendment by implication of c. 19, and it was in fact so amended.
3. Prior to the arguments in the trial court on the demurrer to defendant's answer, several corporations engaged in business as commission merchants served and filed complaints in intervention in the action. In this court they have submitted a brief as amici curiae. They charge that the action is collusive and that this court *Page 259 
should remand the case to the district court to determine whether it is collusive before proceeding to hear it on its merits. Plaintiff and defendant deny that the action is collusive, but admit that it is a friendly suit.
This court has defined collusion in Burt v. Clague, 183 Minn. 109,111, 235 N.W. 620, 621, as follows:
"* * * Collusion in its legal significance involves an agreement between two or more persons to defraud another of his rights by the forms of law or to obtain an object forbidden by law."
See, also, Brainerd Dispatch Newspaper Co. v. County of Crow Wing, 196 Minn. 194, 264 N.W. 779. Under the above definition, the situation as presented to us does not constitute a collusive action. The pleadings as drawn present a real and substantial controversy. The legal issues raised by these pleadings were fully presented to the trial court and to this court. In fact, both the briefs and the oral arguments here gave no indication, except by the admissions, that it was even a friendly suit, much less collusive. A clean-cut issue was presented. Interveners expressly approved plaintiff's brief and at the oral argument admitted that there was a full presentation of the law. Their brief added nothing of substance to the argument of plaintiff. Tested by the manner and skill in which this case was presented to the court, there is nothing here to meet the legal requirements of collusion. The fact that an action is amicable does not make it collusive.
"* * * Feigned cases and fictitious and collusive suits will not be entertained, although the mere fact that a suit is made up in a friendly spirit does not make it a fictitious or collusive one. Amicable suits may be brought for the determination of the respective rights of the parties thereto, but when brought for the sole object of affecting the rights of third persons, they cease to be adversary and become collusive." 1 Am. Jur., Actions, § 19.
"* * * if there is an actual controversy involving adverse interests between the parties, the [amicable] action will not be regarded as fictitious or collusive, although the right involved is asserted or *Page 260 
denied for the purpose of making a test case, * * *." 1 C. J. S., Actions, § 19.
Order affirmed.
[4] See, M.S.A. §§ 228.01 to 223.11, and cf. Mason St. 1927, §§ 6197 to 6206.
[5] The word "not" appears to have been omitted from L. 1923 through clerical or typographical error.